Peter S. **BERNARD**, d/b/a **TGB Marketing Company**, Plaintiff,

v.

**COMMERCE DRUG CO., INC.** and **Del Laboratories, Inc.,** Defendants.

No. CV 91–1113.

United States District Court, E.D. New York.

Sept. 27, 1991.

Kenneth Adler & Associates and Melville, N.Y., Kramer, Brufsky & Cifelli, P.C. by Allen D. Brufsky, Southport, Conn., for plaintiff.

Kirschstein, Ottinger, Israel & Schiffmiller, P.C. by Martin Schiffmiller, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, plaintiff Peter S. Bernard ("Bernard") asserts

claims against defendants Commerce Drug Company ("Commerce") and Del Laboratories, Inc. ("Del") (collectively, "defendants") for, *inter alia,* trademark violations under the Lanham Act, 15 U.S.C. § 1051 *et seq.,* and more specifically 15 U.S.C. §§ 1125(a) and 1120, as well as claims arising under state and common law. Currently before the Court are: defendants' motion for partial summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure; defendants' motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; and plaintiff's cross-motion for partial summary judgment on the trademark infringement claim. After a brief recitation of the background facts, the Court will address the motions.

## BACKGROUND

### Plaintiff's Arthriticare

In July of 1988, plaintiff, vice president of a medical supply company, met with Robert Albus ("Albus"), an executive of two related companies, Premier, Inc. and Sports Health, Inc., in an attempt to market a line of sports medicine. One of the products in that line, "Arthriticare" an analgesic gel used to treat "sprains and strains," *see* Defendant's Local Rule 3(g) statement at 2, forms the basis of this controversy. The product was designed for topical application to a given problem area on the surface of the body, which would then be immersed in warm water for several minutes until the pain subsided. Thereafter, plaintiff decided that Arthriticare would be marketed through Bernard's own private business, TGB Marketing ("TGB"), as a topical analgesic for arthritis sufferers. A license arrangement was agreed upon whereby Bernard was given an option, to expire October 31, 1990, to become a formal licensee of one of Albus' companies in connection with the manufacture and marketing of Arthriticare.

After deciding upon the name Arthriticare, Bernard conducted a trademark search for Arthriticare in August of 1989. In February of 1990, Bernard began to market Arthriticare through direct mailings to consumers, offering free samples of the product to known sufferers of arthritis. Of the approximately 20,000–25,000 consumers to whom the offering was mailed, about one-third requested the free sample, and of that amount, approximately 240 consumers ultimately purchased the product. *See id.* at 5; Plaintiff's Local Rule 3(g) statement at 5. At the end of October 1990, the license agreement expired, never having been exercised by Bernard. Nevertheless, plaintiff maintains that the Arthriticare product continues to be marketed and sold to consumers from plaintiff's warehouse stock. To date, plaintiff's trademark remains unregistered.

### Defendants' ArthriCare

Commerce, a manufacturer of over-the-counter pharmaceutical products, had for many years marketed topical analgesic products under the trademark Exocaine. In an apparent effort to revitalize its Exocaine product line, Commerce conducted a series of clinical and marketing studies between 1988 and 1989, and decided to adopt the name "ArthriCare". After a trademark search for ArthriCare in September of 1989 indicated no conflicting trademarks, Commerce filed a trademark application on December 14, 1989. *See* Defendant's Local Rule 3(g) statement at 7.

In March of 1990, Commerce received an office action from the Patent and Trademark Office indicating that its application for ArthriCare would be suspended and not proceed to registration pending the disposition of a prior application filed by plaintiff on December 1, 1989, under the name "Arthriticare." According to defendants, the trademark application by plaintiff preceded the filing of defendants' application by thirteen days. *See id.* at 8. It appears that Commerce's application for ArthriCare has not proceeded to registration and is still pending in the Patent and Trademark Office.

Throughout late 1989 and the first half of 1990, Commerce continued the final stages of development for its ArthriCare products for the retail market. The product was first introduced to customers through national retail stores in June of

1990, and was available for mass shipment in September of that year. Since that time, Commerce has sold in excess of 800,000 units of its ArthriCare products to retail stores for resale to consumers, representing sales of over two million dollars. *See id.* at 9. Currently, Commerce continues to sell the ArthriCare product to consumers nationwide.

In his amended complaint, plaintiff asserts five causes of action. Count one alleges that defendants' ArthriCare trademark is confusingly similar to plaintiff's Arthriticare, and therefore is a trademark infringement pursuant to 15 U.S.C. § 1125(a). Count two asserts a claim for a false or fraudulent trademark registration, pursuant to 15 U.S.C. § 1120. The remaining three counts arise out of state and common law, and include claims for false misrepresentation, dilution of trademark and name, (pursuant to § 368–d of the New York General Business Law), and common law trademark infringement and unfair competition.

## DISCUSSION

### Trademark Infringement

The Court first turns to address defendants' motion for summary judgment as to count one of the amended complaint, since that motion raises the threshold issue of whether plaintiff's mark is entitled to protection. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court reiterated this standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), when it stated that "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The *Celotex* Court determined that "[i]n such a situation, there can be 'no

genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. at 2552. In determining whether or not a genuine issue has been raised, the district court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987) (citations omitted).

It is well-established that for purposes of determining whether an existing unregistered trademark is entitled to protection from the introduction of another similar trademark, a court must first ascertain whether the first mark is generic, descriptive, suggestive, or arbitrary or fanciful. *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 212 (2d Cir.1985); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). Marks belonging to the first category, generic, are not entitled to protection under the Lanham Act because they merely describe the article or substance represented. In other words, generic marks are considered to be those which typically refer to the generic class or category of which the product is but a species. *Papercutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 561 (2d Cir. 1990).

Descriptive marks, those "which convey an immediate idea of some characteristic or attribute of the product," *id.* at 562, are protectible only if secondary meaning can be established. *See id.* Secondary meaning exists where the descriptive meaning of a word is subordinated by a symbol of identification associated with the mark. *Id.* (defining secondary meaning as "proof that the public has come to associate the term with a particular source"); *Thompson Medical*, 753 F.2d at 215–16; *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir.1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). That is, a typical consumer is more likely to associate the trademark with the product, rather than with the thing it purportedly describes. Without evidence of

secondary meaning, a descriptive mark would not be entitled to protection. *Perfect Fit*, 618 F.2d at 953; *see also Abercrombie & Fitch*, 537 F.2d at 11.

■ Suggestive marks generally require some imagination on the part of the consumer to determine the nature of the product, and are entitled to protection without the need to establish secondary meaning. *Papercutter*, 900 F.2d at 562; *Thompson Medical*, 753 F.2d at 213. More specifically, the ordinary consumer would be unable to readily associate a suggestive mark with the product it represents. *See Abercrombie & Fitch*, 537 F.2d at 10–11.

■ Where it is necessary to determine whether a particular mark is descriptive or suggestive, since at times the terms are difficult to distinguish, it has been noted that:

A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

*Abercrombie & Fitch*, 537 F.2d at 11 (quoting *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968)). Entitled to the most protection are marks that are classified as arbitrary or fanciful, since they are "so distinctive and indicative of a product's source, rather than its qualities or attributes, that they, unlike suggestive terms, enjoy trademark protection without the need of debating whether they are 'merely descriptive.'" *Papercutter, Inc.*, 900 F.2d at 562 (quoting *Abercrombie & Fitch*, 537 F.2d at 9–11 (2d Cir.1976)).

It is plaintiff's contention that the mark "Arthriticare" is suggestive, in that the term by itself does not conclusively reveal the treatment of arthritis ailments. On the other hand, defendants argue that "Arthriticare" is descriptive, and as there is no secondary meaning attributable to the mark, it is not entitled to protection. Thus, the first issue to be addressed herein is the proper classification of plaintiff's mark Arthriticare. As is made clear by the parties' arguments, the inquiry can be more narrowly framed as the question whether plaintiff's mark is descriptive or suggestive.

"Descriptive terms are distinguished from suggestive terms by evaluation of what prospective purchasers perceive in terms of an indication of source, as well as the potential impact on competitors of the appropriation of the term as a trademark by a particular seller." *Papercutter*, 900 F.2d at 563 (citing to Restatement (Third) of Unfair Competition § 14 comment b, at 62 (Tent. Draft No. 2 1990)). Notwithstanding the fact that a number of courts have passed judgment on this issue, and that numerous authorities have commented on the distinction, the line between what may be considered descriptive as opposed to suggestive remains unclear. *See, e.g., Abercrombie & Fitch*, 537 F.2d at 9.

■ The essential question for purposes of this inquiry is whether the ordinary consumer would require "imagination, thought and perception" to associate the trademark Arthriticare with the product and its purpose, i.e., a form of treatment for arthritis sufferers. *See, id.* at 11. In this Court's view, the issue is not, as plaintiff proposes, whether the mark is sufficiently descriptive of a *specific* form of arthritis treatment. *See,* Plaintiff's Combined Memo at 21–22. Rather, the determination rests upon whether the mark conveys "an immediate idea of some characteristic or attribute of the product...." *Papercutter*, 900 F.2d at 562.

■ To this end, the Court rejects plaintiff's argument that Arthriticare, an analgesic gel used to relieve arthritis pain, could be interpreted as a product for use in a manner other than for the treatment of arthritis. The first term of the mark, "Arthriti-", save for the final letter, actually spells the word arthritis. Indeed, there does not appear to be another word in the English language beginning with these letters but the words "arthritis" and "arthritic." *See* Webster's Third New Int'l Dictionary at 123 (1981). The second half, "-care", most certainly refers to a form of

treatment or other relief. Combined, it is difficult to perceive of the need for additional imagination, thought or perception to ascertain the nature or qualities of the Arthriticare product.

It appears to this Court that the descriptive nature of the mark Arthriticare goes much further than does the mark "PHYSICIANS FORMULA" toward identifying the given product. *See Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 82 (2d Cir.1988) (involving trademark infringement claim by PHYSICIANS FORMULA skin creams and lotions against PHYSICIANS & SURGEONS mark for soaps and creams). As noted by the Second Circuit, PHYSICIANS FORMULA does little to identify the product other than to locate it in the realm of medicine, and therefore the court therein characterized the mark as suggestive. *Id.* As implied by the Second Circuit, the PHYSICIANS FORMULA mark could conceivably relate to any type of treatment for any ailment. In contrast, the mark Arthriticare specifically and immediately conveys the information that the product is used to treat the symptoms of arthritis. Given the rather clear distinction, plaintiff's reliance on *Physicians Formula* is misplaced. *See* Plaintiff's Combined Memo. at 21. Moreover, none of the cases cited by plaintiff lead this Court to the conclusion that Arthriticare is properly classified as a suggestive mark. Indeed, based on the discussion above this Court finds that Arthriticare is a descriptive mark, and therefore only entitled to protection upon a showing of secondary meaning. *See Papercutter,* 900 F.2d at 562; *Thompson Medical,* 753 F.2d at 217; *Abercrombie & Fitch,* 537 F.2d at 10–11.

■ As the Second Circuit has noted, secondary meaning may attach to a mark when "it can be established that 'consumers have come to associate [it] with a particular manufacturer or source.'" *Thompson Medical,* 753 F.2d at 217 (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 618 F.2d 950, 953 (2d Cir.1980)). Put another way, where the issue becomes one of establishing secondary meaning, the rele-vant inquiry focuses upon whether the mark, "although not inherently distinctive, comes through use to be uniquely associated with a single source," that is, " 'whether the public is moved in any degree to buy an article because of its source.' " *Papercutter,* 900 F.2d at 564 (quoting *American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 663 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980)). Moreover, the burden of proof rests upon the party claiming rights in the mark, *see id.* (citing *815 Tonawanda Street Corp. v. Fay's Drug Co.,* 842 F.2d 643, 647–48 (2d Cir.1988)), and " 'entails vigorous evidentiary requirements.' " *Id.* (quoting *Ralston Purina Co. v. Thomas J. Lipton, Inc.,* 341 F.Supp. 129, 134 (S.D.N.Y.1972)). Direct or circumstantial evidence may establish secondary meaning, including the use of survey evidence by a representative sample of consumers. *Id.* (citation omitted). The extent of public exposure to the mark as determined by the sales volume, length of time of use, and promotional efforts may also be utilized to establish secondary meaning. *See id.* (citations omitted).

With respect to the case at bar, the primary indicators for purposes of establishing secondary meaning occurred during the course of plaintiff's initial marketing plan. An important statistic from that event is the limited ultimate response, (240 consumers), to plaintiff's initial offering to nearly 25,000 arthritis sufferers. Moreover, in light of the fact that plaintiff's entire advertising campaign only lasted for a period of between seven and eight months, there is little doubt but that an extremely small segment of the public has had any real exposure to the Arthriticare product. In light of this fact alone, it is difficult to ascertain how plaintiff could argue that Arthriticare has acquired secondary meaning. As noted by the Second Circuit, a showing of secondary meaning "depends on whether a *significant* number of prospective purchasers understand the term when used in connection with the particular kinds of goods involved ... as indicative of an association with a specific entity." *Id.* at 564 (emphasis added).

Thus, the evidence presented herein does not support a finding of secondary meaning. Aside from the relatively minimal sales, (it is to be noted that plaintiff's product has never been sold in retail stores), plaintiff's failure to exercise his option pursuant to the license he initially received from Albus indicates that he no longer has the right to manufacture Arthricare. *See* Defendant's Memo. at 21. In sum, having considered the factors listed above in light of the evidence presented, this Court concludes that plaintiff has failed to establish secondary meaning for its descriptive mark. Accordingly, defendants are entitled to summary judgment as to count one of the amended complaint, which claims trademark infringement pursuant to 15 U.S.C. § 1125(a). *See Thompson Medical*, 753 F.2d at 216 (noting that "[w]here a mark is ineligible for protection, there is no need to examine likelihood of confusion").

*Fraudulent Registration*

Count two of the amended complaint asserts a claim for fraudulent trademark registration, pursuant to 15 U.S.C. § 1120. That section provides that:

Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120. It must be emphasized that defendants herein have not procured a registration for their ArthriCare mark. The clear language of the statute indicates that it will apply to *registered* trademarks only. Plaintiff has not cited any authority, binding or otherwise, which directly supports application of the statute to a scenario involving an unregistered mark, as does the instant case.

On the other hand, defendants rely upon *Country Mutual Ins. Co. v. American Farm Bureau*, 876 F.2d 599 (7th Cir.1989), in support of the argument that § 1120 is inapplicable where a defendant's trademark has not been registered. *See id.* at 601. In light of the clear language of the statute, as well as the persuasive reasoning of the *Country Mutual* court, this Court finds that plaintiff's claim for a fraudulent trademark registration cannot be maintained at a point in time prior to procurement of registration. Accordingly, defendants' motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is granted as to count two of the amended complaint.

*Remaining Claims*

Having disposed of counts one and two against plaintiff, the Court notes that the basis for the remaining three counts, as alleged in the amended complaint, are pendent jurisdiction and diversity of citizenship. However, inasmuch as there remain no federal claims, and since diversity jurisdiction is lacking [1], the remaining claims are hereby dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Calderone Enter. Corp. v. United Artists Theatre Circuit*, 454 F.2d 1292, 1297 (2d Cir. 1971), *cert. denied*, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972).

### CONCLUSION

For the reasons stated above, defendants' motions for summary judgment as to count one and for judgment on the pleadings as to count two are granted. Plaintiff's cross-motion for summary judgment is denied. In addition, for the reasons stated above the remaining claims are hereby dismissed. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.

---

1. According to the amended complaint, plaintiff is a citizen of New York. Amended complaint at para. 1. The amended complaint additionally asserts that defendants maintain their principal places of business in Farmingdale, New York. *Id.* at paras. 2, 3. Thus, there is no diversity of citizenship. *See* 28 U.S.C. § 1332(c)(1).