Peter S. BERNARD, doing business
as TBG Marketing Co.,
Plaintiff–Appellant,

v.

COMMERCE DRUG CO., Del Labora-
tories Inc., Defendants–Appellees.

No. 963, Docket 91–9060.

United States Court of Appeals,
Second Circuit.

Argued March 30, 1992.

Decided June 17, 1992.

Allen D. Brufsky, Southport, Conn. (Julia
D. Hart, Jamie Johnson, Kramer, Brufsky
& Cifelli, P.C., Southport, Conn., of coun-
sel), for plaintiff-appellant.

Martin W. Schiffmiller, New York City
(David B. Kirschstein, Kirschtein, Ottinger,
Israel & Schiffmiller, P.C., New York City,
of counsel), for defendants-appellees.

Before MINER and McLAUGHLIN,
Circuit Judges, and AMON, District
Judge.*

MINER, Circuit Judge:

Plaintiff-appellant Peter S. Bernard ap-
peals from a summary judgment entered
on September 30, 1991 in the United States
District Court for the Eastern District of
New York (Wexler, *J.*) in favor of defen-
dants-appellees Commerce Drug, Inc.
("Commerce") and parent-company Del
Laboratories, Inc. In bringing this action
to secure damages and injunctive relief,
Bernard alleged, *inter alia*, that defen-

---

* Hon. Carol Bagley Amon, United States District
Judge for the Eastern District of New York, sitting by designation.

dants' "ArthriCare" trademark infringed his "Arthriticare" mark in violation of the Lanham Act, 15 U.S.C. § 1125(a). The district court granted defendants' motion for summary judgment and dismissed plaintiff's infringement claim, holding that Arthriticare is a descriptive trademark, that the mark had not acquired secondary meaning, and that the mark therefore was not entitled to trademark protection. *Bernard v. Commerce Drug Co.*, 774 F.Supp. 103, 107–08 (E.D.N.Y.1991). For the reasons that follow, we now affirm.

## BACKGROUND

In August 1989, Bernard, doing business as TBG Marketing Company, conducted a trademark search for "Arthriticare", a name he intended to use to market a topical heat analgesic designed to provide relief for arthritis sufferers. His product is a gel that is applied to the surface of the user's skin. The area of skin where the gel is applied then is immersed in warm water until the user is relieved of arthritis pain. Pursuant to a licensing arrangement, Bernard was given an option, to expire October 31, 1990, to become a formal licensee with marketing rights to the product. Bernard's trademark search revealed no conflicting uses and thereafter, on December 1, 1989, he filed an application for federal trademark registration with the Patent and Trademark Office.

Thirteen days after Bernard's application was filed, Commerce filed a trademark application for the name "ArthriCare." Commerce, a major over-the-counter pharmaceutical manufacturer, had been for many years marketing a topical analgesic, functionally similar to Bernard's, under the trademark Exocaine. For marketing reasons, Commerce desired to change the name of its product to ArthriCare. After a September 1989 trademark search revealed no conflicting trademarks, Commerce filed its trademark application. In March 1990, the Patent and Trademark Office notified Commerce that its ArthriCare trademark application would be suspended pending disposition of Bernard's Arthriticare trademark application.

Bernard had begun marketing efforts for his Arthriticare product through direct mailings in February 1990. He mailed approximately 20,000 offers for free samples to targeted potential customers. Eight thousand of those targeted responded by requesting samples, and 240 of the target group eventually ordered and paid for the product—the first sale occurring on or about April 1, 1990. Subsequently, Bernard allowed the licensing option for the Arthriticare product to expire by not exercising his licensing agreement option rights before the end of October 1990 (although he contends that he continues to sell the product from inventory produced under the licensing agreement). In contrast, Commerce began marketing its ArthriCare product in June 1990 through national retail stores, and has sold over 800,000 units. Commerce aggressively continues to market its ArthriCare product.

In an opposition to Bernard's attempted trademark registration dated August 7, 1990 and filed with the Patent and Trademark Office, Commerce alleged that it "commenced to use and has continued to use the trademark ARTHRICARE" prior to the time Bernard filed his trademark application. As a second ground of opposition, Commerce asserted that "[s]ince the word 'arthritic' is both an adjective and a noun, the purported trademark ARTHRITICARE is no more than a descriptive combination word describing care for a person afflicted with arthritis and, accordingly, is unregistrable under Section 2(e) of the Lanham Act because when used in connection with [Bernard's] goods the word is merely descriptive of them." On February 27, 1991, Commerce withdrew its first ground of opposition to Bernard's trademark application that alleged prior use, conceding that its only prior use was "token use" "not confer[ring] any right of priority on [Commerce]." Commerce continued, however, to maintain that Bernard's trademark was descriptive, and therefore "unregistrable."

On March 27, 1991, Bernard commenced this suit against Commerce alleging: (i) trademark infringement pursuant to 15 U.S.C. § 1125(a); (ii) false or fraudulent

trademark registration under 15 U.S.C. § 1120; and (iii) various state and common law claims. By notice of motion dated May 21, 1991, Commerce moved for summary judgment on the section 1125(a) infringement count, for judgment on the pleadings for failure to state a claim on the section 1120 fraudulent registration count, and for dismissal for lack of subject matter jurisdiction on the remaining state and common law claims. On June 10, 1991, Bernard filed a cross-motion for summary judgment on the trademark infringement claim, maintaining that his Arthriticare trademark was a suggestive mark, and that Commerce's use of a virtually identical trademark constituted infringement. By order dated September 27, 1991, the district court granted summary judgment for Commerce on the infringement claim, granted judgment on the pleadings for failure to state a fraudulent registration claim, and dismissed the remaining state and common law claims for lack of subject matter jurisdiction. Bernard now appeals, arguing that the district court erred by granting summary judgment in favor of Commerce on the infringement claim.

## DISCUSSION

A moving party is entitled to summary judgment upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review a district court's grant of summary judgment de novo. *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991).

■ The law of trademarks identifies four categories of terms with respect to trademark protection. "Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). A generic term receives no trademark protection. *Papercutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 561–62 (2d Cir.1990). A descrip-

tive term only is given trademark protection if the holder of the mark can prove secondary meaning due to public association of the trademark with the holder's product or service. *Id.* at 562. Terms deemed suggestive are entitled to trademark protection regardless of whether secondary meaning can be established. *Id.* Heading the list are terms deemed arbitrary or fanciful, receiving trademark protection because of the distinctiveness of these marks. *Id.*

In the instant case, the district court concluded that Arthriticare, as applied to an analgesic gel formulated to relieve arthritis pain, is a descriptive trademark. *Bernard*, 774 F.Supp. at 108. The district court reasoned that Arthriticare could not "be interpreted as a product for use in a manner other than for the treatment of arthritis," *id.* at 107; "the mark Arthriticare specifically and immediately conveys the information that the product is used to treat the symptoms of arthritis," *id.* at 108. The court also found that Bernard failed to establish secondary meaning for his descriptive mark, and therefore granted summary judgment in favor of Commerce on the trademark infringement claim. *Id.* at 108–09.

■ On appeal, Bernard argues that the district court erred in concluding that Arthriticare is a descriptive trademark because "it necessarily requires the exercise of some thought, perception or imagination to conjure the image of a pain relieving topical analgesic gel from the coined word." Commerce counters that the court properly found Bernard's mark to be descriptive, as "no imagination is necessary for the public to understand that 'Arthriticare' is a product intended for the care of arthritics or treatment of arthritis." For the reasons stated below, we agree with the district court's conclusion that Arthriticare is a descriptive trademark and affirm the judgment of that court.

While we have identified and employed useful standards to guide our analysis as to whether a term is descriptive or suggestive, *see generally Papercutter*, 900 F.2d at 563; *20th Century Wear, Inc. v. San-*

mark–*Stardust Inc.*, 747 F.2d 81, 87 (2d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985); *Abercrombie & Fitch*, 537 F.2d at 11, we have recognized that such "pigeonholing or labeling—has always been a slippery business," largely "depend[ing] upon the particular context of the mark's use, ... its time of use, and ... its group of users." *20th Century Wear*, 747 F.2d at 87.

We consistently have utilized the following formulation to distinguish between terms that are descriptive and those that are suggestive:

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

*Abercrombie & Fitch*, 537 F.2d at 11 (quoting *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968)); *see also Papercutter*, 900 F.2d at 563; *20th Century Wear*, 747 F.2d at 87. Characterizing the category of descriptive terms more broadly, we have held that a term can be descriptive if it describes the purpose or utility of the product. *20th Century Wear*, 747 F.2d at 88; *see also Centaur Communications Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1220 (2d Cir.1987); *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir.1985) ("[m]arks that describe the use to which a product is put are descriptive"). In *20th Century Wear*, we cited with approval a leading trademark treatise, which "distinguishes among three subcategories of marks that describe the product's purpose or utility: (1) marks describing the problem or condition that the trademarked product is designed to remedy or otherwise deal with; (2) marks that describe the use to which the product or service is put; and (3) marks that describe the effect that the product or service is supposed to produce after it is used." *20th Century Wear*, 747 F.2d at 88 (citing 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies § 18.05, at 27 (4th ed. 1983)). Most recently, we determined that a mark can be classified as descriptive if it conveys "an immediate idea of some characteristic or attribute of the product." *Papercutter*, 900 F.2d at 562. "Examples of descriptive terms are terms conveying 'the characteristics of the goods, services, or business,' or indicating the purpose, functions, size, quantity, capacity, or merits of a product, the effects of its use, or the *class of intended purchasers*." *Id.* at 563 (emphasis added).

Applying these principles, we are constrained to agree with the district court's conclusion that Arthriticare is a descriptive trademark in the context here presented. Clearly, the mark describes the problem or condition (arthritis) that the trademarked product is designed to remedy or otherwise deal with. *See 20th Century Wear*, 747 F.2d at 88. Furthermore, Arthriticare describes the general use (treatment for the care of arthritics) to which the product or service is put. *See id; see also Thompson Medical*, 753 F.2d at 216. The mark even goes so far as to suggest the class of intended purchasers (arthritis sufferers). *See Papercutter*, 900 F.2d at 562. Given the information readily conveyed by the mark, it is not necessary, contrary to Bernard's contention, that the term also describe the specific ingredients or characteristics of the product—a topical heat analgesic—in order for the term to be descriptive. Such a description would render the trademark generic, however, an even worse scenario as far as Bernard is concerned. *See generally Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 100 (2d Cir.1989) ("[a] term or phrase is generic when it is commonly used to depict a genus or type of product, rather than a particular product").

The conclusion that Arthriticare, as applied to an arthritis rub, is a descriptive term is supported by case law. *See Papercutter*, 900 F.2d at 563–64 ("Papercutter" for corporation engaged in business of selling paper designs and ornaments); *Thompson Medical*, 753 F.2d at 216–17 ("Sportscreme" for topical heat analgesic); *20th Century Wear*, 747 F.2d at 87–88 ("Cozy Warm ENERGY-SAVERS" for pajamas and nightgowns); *Feathercombs, Inc. v. Solo*

*Prods. Corp.*, 306 F.2d 251, 255 (2d Cir.) ("Featherlight" for hair rollers), *cert. denied*, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962); *see also Remington Prods., Inc. v. North Am. Philips Corp.*, 892 F.2d 1576, 1580–82 (Fed.Cir.1990) ("Travel Care" for pressing irons); *Karmikel Corp. v. May Dep't Stores Co.*, 658 F.Supp. 1361, 1370 (S.D.N.Y.1987) ("Fast Track" for athletic wear); *Scholastic, Inc. v. Macmillan, Inc.*, 650 F.Supp. 866, 871 (S.D.N.Y.1987) ("Classroom" for magazine directed at teachers and students).

As noted, we previously have held that "Sportscreme", also a topical analgesic rub, was a descriptive trademark because "[n]o exercise of the imagination is necessary for the public to understand that the product is a cream useful in connection with sports." *Thompson Medical*, 753 F.2d at 216. We held this despite the fact that the term did not "convey any thought ... as to the significance of the product—i.e., whether it is useful to relieve dryness, itchiness, odor or pain." *Id.* at 216 n. 15. Bernard is correct in pointing out that the latter half of the Arthriticare term, "care", is less descriptive than "creme", the corresponding portion of the Sportscreme trademark, in terms of describing the particular characteristics of the product. However, it is also the case that the initial portion of the mark in question, i.e., "Arthritic", plainly is more descriptive than "Sports", the corresponding portion of the *Thompson Medical* mark, in terms of describing the condition the product is useful for and the targeted users. Thus, while it is true that, unlike Sportscreme, the term in question here does not describe the specific nature of the goods, Arthriticare does describe the problem or condition the product is designed to remedy, the general use to which the product is put, and the class of its intended purchasers, and therefore is a descriptive trademark. *See Papercutter*, 900 F.2d at 562; *Thompson Medical*, 753 F.2d at 216; *20th Century Wear*, 747 F.2d at 88.

Our conclusion is bolstered by the concern that "exclusive use of the term might unfairly 'monopolize' common speech." *20th Century Wear*, 747 F.2d at 90. The record indicates that at least one national

pharmacy chain markets a generic product similar to Bernard's under the name "arthritic pain lotion without aspirin," and another pharmaceutical company advertises its product (in bold lettering on its packaging) as "Arthritic Pain Reliever." According trademark protection to Arthriticare could forever preclude manufacturers of products marketed to arthritis sufferers from using the root of the word "arthritic" for their products.

Bernard primarily relies on our decisions in *Hasbro, Inc., v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir.1988), *Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80 (2d Cir.1988), and *West & Co. v. Arica Inst.*, 557 F.2d 338 (2d Cir. 1977) (per curiam), for support. These cases, however, do not dictate a different result. In *Hasbro*, we held that the term "Gung–Ho" was suggestive as applied to a toy Marine action figure because the term merely described elements of the personality attributed to the toy, *see Hasbro*, 858 F.2d at 75; the term did not convey that the product was a Marine soldier action figure, or for that matter that the product was even a toy. In the instant case, however, the term Arthriticare plainly connotes that the product is designed to provide some form of arthritis relief.

In *Physicians Formula*, we held that the mark "Physicians Formula," for skin care products, was suggestive "because the mark does little to identify the product other than to locate it in the realm of medicine." *Physicians Formula*, 857 F.2d at 82. As correctly distinguished by the district court, however, Arthriticare does "specifically and immediately convey[ ] the information that the product is used to treat the symptoms of arthritis." *Bernard*, 774 F.Supp. at 108.

Also inapposite is our decision in *West & Co.*, 557 F.2d 338. In that case, the term "psychocalisthenics," for a mental exercise program, was held to be suggestive because "[i]t is an odd and unusual term which suggests a number of things but which does not describe any one thing in particular." *Id.* at 342. In contrast, Arthriticare is certainly a more ordinary term,

and one that specifies that the product is designed to provide arthritis relief.

We also agree with the district court, for the reasons stated in its memorandum and order, 774 F.Supp. at 108–09, that Bernard failed to establish that secondary meaning has attached to his Arthriticare mark, *see generally Papercutter*, 900 F.2d at 564. Secondary meaning "depends on whether a significant number of prospective purchasers understand the term when used in connection with the particular kinds of goods involved ... as indicative of an association with a specific entity." *Id.; see also Thompson Medical*, 753 F.2d at 212–13 & n. 9. Bernard produced no evidence that a significant number of prospective purchasers associate his Arthriticare trademark with his product.

We have considered appellant's remaining arguments and find them to be without merit.

## CONCLUSION

For the reasons stated, we affirm the judgment of the district court.