IDEAL WORLD MARKETING, INC., Plaintiff,

v.

DURACELL, INC., Defendant.

No. 96–CV–4644(FB).

United States District Court, E.D. New York.

July 28, 1998.

Martin B. Pavane, Cohen, Pontani, Lieberman & Pavane, New York City, for Plaintiff.

Marie V. Driscoll, Robin, Blecker, Daley & Driscoll, New York City, for Defendant.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

This is an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a), and for common law unfair competition. Plaintiff Ideal World Marketing, Inc. ("Ideal World"), a Queens-based distributor of consumer electronic devices, has used the term "PowerCheck" in connection with the marketing of camcorder battery packs since 1993. Since 1996, defendant Duracell, Inc. ("Duracell") has used PowerCheck to promote alkaline batteries that have a feature that enables the consumer to verify the remaining power. Ideal World alleges that Duracell's use of PowerCheck infringes upon its prior use and seeks, *inter alia*, to enjoin Duracell from continuing to use PowerCheck to promote its products. Duracell now moves for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because the Court concludes that PowerCheck is a descriptive term that has not acquired a secondary meaning, Ideal World consequently does not have trademark rights in Power-Check. Accordingly, Duracell's motion is granted and the complaint dismissed.

## BACKGROUND

The following discussion of facts is drawn from Duracell's Statement of Undisputed Facts and the documentary exhibits included among the parties' submissions. In all material respects, the facts are undisputed.

Ideal World is in the business of importing and distributing photographic, video, cellular and computer accessories, including batteries, tripods, video lights, cleaning kits and carrying cases. Since 1993, Ideal World has used the term PowerCheck in connection with the marketing of rechargeable camcorder battery packs. Ideal World has not registered PowerCheck as a trademark and did not have a trademark search performed before using PowerCheck to market its camcorder batteries, although the symbol "TM" sometimes appears after the term Power-

Check on Ideal World's packages. Ideal World's PowerCheck batteries, which retail for between $25 and $100, are sold under the AC–Delco and Premium Gold trademarks in three types of packages, each of which indicates the brands of camcorders in which the battery packs may be used, but does not indicate that the batteries are distributed by Ideal World. Instead, the packages indicate that the batteries are distributed by Vidpro Corporation ("Vidpro"), a related, though separate, corporation. Although there is testimony that Ideal World has looked into marketing alkaline batteries and rechargeable batteries for cellular telephones and laptop computers, it appears as if rechargeable camcorder batteries are the only items presently being marketed by Ideal World under the PowerCheck label.

Ideal World's PowerCheck batteries have an LED display that indicates the power remaining in the battery, and are sold in electronics, photography and general merchandise stores in thirty-one states and the District of Columbia. Advertising of the batteries has been limited to consumer catalogues, press releases at trade shows, and a single advertisement in a trade publication. Sales have largely been concentrated in Michigan and New York. According to figures provided by Ideal World and a table included among Duracell's moving submissions, Ideal World's Michigan PowerCheck sales were as follows: in 1993, total sales of $4,194.00; in 1994, $31,180.00; in 1995, $130,-163.00; and through October 1996, $120,-892.00. Ideal World's PowerCheck sales in New York were as follows: in 1993, total sales of $23,970.00; in 1994, $104,253.00; in 1995, $98,167.00; and though October 1996, $31,518.00. In 1993, Ideal World sold a total of 1,720 batteries, in 1994, 6,280 batteries, in 1995, 10,224 batteries, and in 1996, 6,610 batteries. According to the Declaration of Hyman Jacobs ("Jacobs"), Ideal World's president, sales of Ideal World's batteries totaled approximately $1 million through September of 1997.

Duracell, the well-known retailer of "copper-top" batteries, is a Delaware corporation with its principal place of business in Connecticut. Duracell has used the term Power-Check in connection with its marketing of AA alkaline batteries since 1996, and expanded its use of PowerCheck to AAA, C and D batteries in the spring of 1997. Like Ideal World, Duracell initially used the symbol "TM" in its marketing of PowerCheck products. The Duracell PowerCheck feature is an on-battery tester that permits the user to check the amount of power remaining in the battery. The front of the Duracell Power-Check label has the words "POWERCHECK A TESTER ON EVERY BATTERY" located beneath the Duracell name and superimposed upon a yellow arrow that points to the PowerCheck feature on the battery. On the back of the package is the phrase "Duracell PowerCheck Check Your Power Anytime … Anywhere!" Duracell's PowerCheck batteries have been extensively advertised and sell for approximately $1 each. They have generated approximately $290,000,000 in sales through February of 1997.

In 1995, Duraname Corp., an affiliate of Duracell, filed applications to register "PowerCheck," "DURACELL PowerCheck," and "PowerCheck A Tester On Every Battery" in the United States Patent and Trademark Office (the "Trademark Office"). The Trademark Office rejected these applications on the ground that the proposed marks closely resembled the "POW–R–CHEK" mark that had been registered by Anderson Power Product, Inc. ("Anderson"), a Delaware corporation based in Boston, in 1981. Prior to its introduction of PowerCheck batteries, Duracell's in-house trademark department undertook a limited trademark search, which, while it did not indicate Ideal World's use of the term PowerCheck, uncovered Anderson's use of POW–R–CHEK in connection with a diagnostic test instrument that checks the performance of industrial batteries, chargers and vehicle electrical systems.[1]

---

1. According to Duracell's Rule 56.1 statement, in addition to Anderson, at least five other entities are marketing products labeled "power check." MicroMat Computer Systems markets a hand held device called "MicroProbe PowerCheck" that is used to check the power in computer batteries by means of a colored LED readout. Deltec Electronics Corporation markets software products called "PowerCheck Pro" and "Power-Check." These products, when used with a com-

Ideal World commenced this action in 1996. In its prayer for relief, Ideal World has demanded a judgment: (1) declaring that Duracell has violated § 43(a) of the Lanham Act and has committed unfair competition under New York common law; (2) determining that Duracell's acts were willful; (3) preliminarily and permanently enjoining Duracell from, *inter alia*, manufacturing, marketing, or advertising any product bearing the PowerCheck name; (4) ordering that Duracell deliver up for destruction any battery products found to infringe Ideal World's copyright, as well as all brochures, stationery, wrappers, labels and other advertisements that would violate the award of injunctive relief; (5) ordering that Duracell pay over to Ideal World all gains, profits and advantages realized through the use of the PowerCheck name; (6) compensating Ideal World for its actual damages; and (7) compensating Ideal World for its costs, including attorneys' fees and other expenses.

In its response to Duracell's First Request for Admissions, Ideal World admitted, *inter alia*, that: (1) Ideal World had not done market research to determine whether consumers associate the term PowerCheck exclusively with Ideal World or Vidpro; and (2) Ideal World has not suffered any quantifiable lost sales from Duracell's use of the term PowerCheck. Therefore, Ideal World stated that it would no longer seek monetary damages for lost sales, or loss of reputation or good will. Thereafter, Duracell moved to strike Ideal World's jury demand on the ground that the relief sought by Ideal World was now purely equitable. In a Memorandum and Order dated March 17, 1998, the Court denied that motion, determining that Ideal World's demand for disgorgement of profits was akin to a legal damage remedy and that Ideal World was consequently entitled to a jury trial. *See Ideal World Market-*

*ing, Inc. v. Duracell, Inc.*, 997 F.Supp. 334, 338–339 (E.D.N.Y.1998).

Duracell now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, contending: (1) Ideal World has no trademark rights in the term PowerCheck; and (2) there is no likelihood of confusion between Ideal World's batteries and Duracell's batteries. Ideal World argues that questions of material fact preclude a judgment in Duracell's favor as a matter of law.

## DISCUSSION

### I. Standard on a Motion for Summary Judgment

A court will grant a motion for summary judgment if there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to identify those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. All ambiguities must be resolved, and all inferences drawn, in favor of the nonmoving party. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998); *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). The judge's role in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir.1997). The Second Circuit has indicated

---

puter that has a battery attachment, allow the user to bring up a screen on the computer that indicates, *inter alia*, the level of charge remaining in the battery and whether it should be replaced. Data Depot, Inc., markets a product called "PC PowerCheck," which is a circuit board that, when connected to a computer, enables the user to determine whether the computer's output voltages are too high or too low. Ultra Systems, Inc. ("Ultra"), sells products

called "POWERCHECK" that are used to check the power in rechargeable batteries. Indeed, Ultra has protested the use of PowerCheck by both Ideal World and Duracell. Finally, Michael Chambers has filed an application in the Trademark Office to register the term "POWERCHECK ENERGY SYSTEMS" for use on an electrical control system designed to control electrical loads in order to save energy.

that, although trademark disputes would appear to hinge upon inherently factual determinations, summary judgment is as appropriate in trademark cases as any other where there are no material disputes of fact. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir.1996); *Bernard v. Commerce Drug Co.*, 964 F.2d 1338, 1343 (2d Cir.1992); *Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 580 (2d Cir.1991); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 876 (2d Cir.1986).

## II. Trademark Infringement

■ "In order to prevail on a claim of trademark infringement in violation of the Lanham Act, a plaintiff must show (1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the defendant's mark infringes, or is likely to infringe, the mark of the plaintiff," which is commonly referred to as the "likelihood of confusion." *Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir.1997); *see also The Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996); *Arrow Fastener Co., Inc. v. The Stanley Works*, 59 F.3d 384, 390 (2d Cir.1995). The starting point for the Court's inquiry is thus whether Ideal World's use of PowerCheck is entitled to trademark protection. As part of this inquiry, the Court must evaluate the distinctiveness of the term, looking to whether the term is (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *See Estee Lauder*, 108 F.3d at 1508; *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993).

■ A generic term is a common name that describes a product, and is never entitled to trademark protection. *See Arrow Fastener Co.*, 59 F.3d at 391. An arbitrary or fanciful term, by contrast, is "distinctive and indicative of a product's source, rather· than its qualities or attributes ..." *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 562 (2d Cir.1990). "An arbitrary term is one that has a dictionary meaning—though not describing the product—like IVORY for soap. A fanciful mark is a name that is made-up to identify the trademark owner's product like EXXON for oil products and

KODAK for photography products." *Gruner + Jahr*, 991 F.2d at 1075–76. Both arbitrary and fanciful terms are always entitled to trademark protection. *Id.* at 1075.

There is no claim here that PowerCheck is generic, arbitrary, or fanciful, and thus the dispute between the parties centers upon whether PowerCheck is a suggestive term or a descriptive one. This distinction is significant because if, as Duracell maintains, PowerCheck is descriptive, it is not entitled to trademark protection unless it has acquired a secondary meaning. *See, e.g., Arrow Fastener*, 59 F.3d at 391; *Gruner + Jahr*, 991 F.2d at 1076. However, if PowerCheck is suggestive, as Ideal World argues, it is entitled to trademark protection without a showing of secondary meaning. *See Arrow Fastener*, 59 F.3d at 391; *Gruner + Jahr*, 991 F.2d at 1076.

■ The Second Circuit has defined a suggestive mark as one which "employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use 'imagination, thought and perception to reach a conclusion as to the nature of goods.'" *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993) (quoting *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir.1985)) (other internal quotations omitted); *see also PaperCutter, Inc.*, 900 F.2d at 563. Examples would be ORANGE CRUSH, which is the name of an orange-flavored soft drink, *see Gruner + Jahr*, 991 F.2d at 1076, or GLEEM, which is the name of a toothpaste. *See PaperCutter, Inc.*, 900 F.2d at 563 (quoting Carter, *The Trouble With Trademark*, 99 Yale L.J. 759, 771 (1990)). A descriptive term, by contrast, "is one that tells something about a product, its qualities, ingredients or characteristics. It may point to a product's intended purpose, its function or intended use, its size, or its merit." *Gruner + Jahr*, 991 F.2d at 1076 (determining that PARENTS is a descriptive mark for a monthly magazine on child-rearing); *see also The Sports Auth.*, 89 F.3d at 961 (THE SPORTS AUTHORITY descriptive of a sporting goods store); *PaperCutter, Inc.*, 900 F.2d at 563 (PAPERCUTTER descriptive of a company that manufactured folded paper

ornaments); *Thompson Med. Co.,* 753 F.2d at 216–17 (SPORTSCREME descriptive of a topical analgesic rub); *Black & Decker Corp. v. Dunsford,* 944 F.Supp. 220, 225 (S.D.N.Y. 1996) (SNAKELIGHT descriptive of a flashlight with a flexible neck); *Bernard v. Commerce Drug Co.,* 774 F.Supp. 103, 107–08 (S.D.N.Y.1991), *aff'd,* 964 F.2d 1338 (2d Cir. 1992) (ARTHRITICARE descriptive of an analgesic gel used to treat arthritis pain).

■ Guided by the foregoing authority, the Court concludes that the term Power-Check is descriptive and not suggestive. The PowerCheck battery marketed by Ideal World is designed to permit the consumer to check the amount of power remaining in the battery. The term PowerCheck thus "conveys the 'immediate idea' of the 'characteristics' of the product." *Black & Decker,* 944 F.Supp. at 225 (quoting *Abercrombie & Fitch v. Hunting World, Inc.,* 537 F.2d 4, 11 (2d Cir.1976)). No exercise of the imagination is necessary to perceive that PowerCheck enables a consumer to check, or verify, the power in the battery. *See Thompson Med. Co.,* 753 F.2d at 216. Indeed, as noted above, in 1981, Anderson registered POW–R–CHEK as a mark, and four other companies are presently marketing products with a power verification feature called "power check." The use of the identical term by several companies to describe diverse products with a power-verification feature supports the Court's conclusion that the term PowerCheck is descriptive and thus not particularly distinctive. *See Estee Lauder,* 108 F.3d at 1511 (holding that district court's finding of distinctiveness of mark "100%" used in respect to facial moisturizer was "undermined" by the trial evidence that there were approximately 70 trademark registra-

tions and pending applications for registration or renewal that incorporated the term "100%," some of which were for cosmetic products). As the Second Circuit has noted, "[t]he trademark law should not grant, in effect, a monopoly to the first mark that effectively and concisely describes a product's use or function." *Id.*[2]

Ideal World argues that PowerCheck should be deemed suggestive because the trademark examiner who ultimately rejected Duraname's application for a PowerCheck trademark did not indicate that the term was descriptive; instead, he declined to register PowerCheck on the entirely separate ground that another company had already registered the similar term POW–R–CHEK. It is true that the examiner's failure to raise a descriptiveness objection may raise a presumption that a mark is more than merely descriptive. *See PaperCutter, Inc.,* 900 F.2d at 563 (quoting *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1132 (2d Cir.1979)). However, this presumption is rebuttable upon a development of the record in the case. *See PaperCutter, Inc.,* 900 F.2d at 563 (determining that, although mark had in fact been registered, it was nonetheless descriptive and not suggestive); *Black & Decker,* 944 F.Supp. at 225–26 (same). It is undisputed that Duraname did not submit specimen labels along with its application, and that the examiner therefore did not have the opportunity to observe that Duracell's battery had a power-checking feature. The Court determines that any presumption that may have attached to the examiner's failure to raise a descriptiveness objection has been adequately rebutted by the undisputed factual record before the Court, which demonstrates that PowerCheck is a descriptive term that is

---

**2.** Ideal World has included among its submissions a photocopied report from William M. Borchard ("Borchard"), a trademark attorney retained by Ideal World as an expert. Borchard opines that PowerCheck is suggestive and not descriptive in nature. However, "the expert testimony of an attorney as to an ultimate issue of domestic law or as to the legal significance of facts is inadmissible." *Motown Productions, Inc. v. Cacomm, Inc.,* 668 F.Supp. 285, 288 (S.D.N.Y. 1987), *rev'd on other grounds,* 849 F.2d 781 (2d Cir.1988) (affidavit from attorney opining that term was suggestive rather than descriptive inadmissible); *see also Hygh v. Jacobs,* 961 F.2d 359,

363 (2d Cir.1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *Larsen v. Ortega,* 816 F.Supp. 97, 105 n. 11 (D.Conn.1992) (noting that it is "significantly" unclear "that a trademark attorney can testify as an expert witness with respect to the ultimate legal question to be determined by the court."). Accordingly, the Court determines that this proposed "expert" report, which offers a legal conclusion based upon the undisputed facts before the Court, impinges upon the Court's role, would be inadmissible at trial, and is of no probative value on this motion.

entitled to trademark protection only if it has acquired a secondary meaning.[3]

In determining whether a product has obtained a secondary meaning, the Court looks to whether the descriptive term, "although not inherently distinctive, comes through use to be uniquely associated with a single source ...." *PaperCutter, Inc.,* 900 F.2d at 564. "Marks acquire secondary meaning when 'the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business.'" *Pirone v. Mac-Millan, Inc.,* 894 F.2d 579, 583 (2d Cir.1990) (quoting *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 104 (2d Cir.1985)); *see also Black & Decker Corp.,* 944 F.Supp. at 226 (" 'To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.' ") (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)). " '[P]roof of secondary meaning entails vigorous evidentiary requirements,' " *Thompson Med. Co.,* 753 F.2d at 217 (quoting *Ralston Purina Co. v. Thomas J. Lipton, Inc.* 341 F.Supp. 129, 134 (S.D.N.Y.1972)), and the burden of proof rests upon the party asserting rights in the purported mark—here, Ideal World. *Thompson Med. Co.,* 753 F.2d at 217. Although the Second Circuit has indicated that lower courts should be cautious about determining secondary meaning in the context of a motion for summary judgment, *see Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 169 (2d Cir.1991), it has nonetheless supported summary judgment where the party asserting rights in the alleged trademark has failed to come forward with evidence that would demonstrate the need for a trial on this issue. *See Bernard,* 964 F.2d at 1343 (affirming district court's grant of summary judgment dismissing complaint, observing that plaintiff had failed to produce "evidence that a significant number of prospective purchasers associate his ... trademark with his product."); *see also Black & Decker Corp.,* 944 F.Supp. at 227 (rejecting claim of secondary meaning on motion for summary judgment).

In determining secondary meaning, the Second Circuit has looked to the following factors: (1) advertising expenditures; (2) consumer studies linking the name of the product to a source; (3) unsolicited media coverage; (4) attempts to plagiarize the mark; and (5) the length and exclusivity of the mark's use. *See Arrow Fastener Co.,* 59 F.3d at 393; *Thompson Med. Co.,* 753 F.2d at 217. "In assessing the existence of secondary meaning, no single factor is determinative, and every element need not be proved. Each case, therefore, must be resolved by reference to the relevant factual calculus." *Thompson Med. Co.,* 753 F.2d at 217 (internal quotations omitted).

Considering each of these factors in turn, the Court first notes that Ideal World has advertised its PowerCheck batteries only minimally. Jacobs testified at his examination before trial that an advertisement for Ideal World's PowerCheck batteries was placed in a trade publication, the name of which he could not recall, and that Ideal World had also placed an unspecified number of advertisements in customer catalogues published by certain vendors of the batteries, including 47th Street Photo and Executive Photo. Jacobs also testified that Ideal World had made press releases describing its Pow-

3. Ideal World contends that Duracell's application for a trademark, when coupled with its use of the symbol "TM," indicates that Duracell must have originally believed that PowerCheck was suggestive and not descriptive. The Court determines that Duracell's abortive efforts to secure trademark protection for the term PowerCheck do not preclude it from arguing in this motion that the term is descriptive. There has been no showing of misrepresentation or reliance that could arguably estop Duracell from maintaining its current position, *see Buttry v. General Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir.1995) ("To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to that detriment."), nor does Duracell's initial decision to attempt to register PowerCheck as a trademark constitute a judicial admission against interest. *See Black & Decker,* 944 F.Supp. at 225 n. 7.

erCheck batteries available at consumer electronics shows in Las Vegas and Miami. Ideal World has not conducted any consumer research or studies that might tend to show that the public associates the PowerCheck camcorder battery with Ideal World. Courts have held that "[c]onsumer surveys are the 'most direct and persuasive evidence of secondary meaning.'" *Black & Decker Corp.*, 944 F.Supp. at 227 n. 9 (quoting *Co–Rect Prods., Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1333 n. 9 (8th Cir.1985)). Indeed, as admitted by Ideal World during discovery, none of the three types of packaging in which the camcorder battery distributed by Ideal World appears even contains the Ideal World name. Battery sales have been modest at best—by Ideal World's own account, only 6,610 in thirty-one states and the District of Columbia in 1996, the year this action was commenced. There is no showing that there has been unsolicited media coverage of Ideal World's PowerCheck products. The only article in the record before the Court is an article in the Photographic Trade News dated March 1, 1995, which surveys a variety of products marketed by a number of battery distributors and indicates that Vidpro—not Ideal World—was marketing a "full line of Power–Check LED batteries ...." Reply Affidavit of Marie V. Driscoll, at Exh. "2," pg. 5. Moreover, Ideal World has been using the PowerCheck name since 1993, only three years before Duracell began its use of PowerCheck. Finally, as noted above, other manufacturers are using the term "power check" to market products that have a power verification feature.

On balance, therefore, having given due consideration to the various factors that enter into a determination of secondary meaning, the Court concludes, based on the material undisputed facts, that Ideal World has fallen well short of demonstrating that the public has come to identify the term Power–Check with the camcorder batteries market-

---

**4.** "The issue of likelihood of confusion turns on whether 'numerous ordinarily prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of the defendant's mark.'" *Estee Lauder*, 108 F.3d at 1510 (quoting *Gruner + Jahr*, 991 F.2d at 1077). Because

ed by Ideal World. Because Ideal World has therefore failed, as a matter of law, to establish that Power Check has attained a secondary meaning, there is no need for the Court to examine the second prong of the test for trademark infringement—the likelihood of confusion between the two marks. *See Thompson Med. Co.*, 753 F.2d at 217 ("If the district court rules that [the term] has not acquired secondary meaning, the mark cannot be protected and the inquiry properly concludes.").[4] Accordingly, Ideal World's first claim, which arises under the Lanham Act, is dismissed. Similarly, Ideal World's second claim, which alleges common law unfair competition, is also dismissed, as this common law claim also requires that Ideal World possess a valid, protectable trademark. *See Pirone*, 894 F.2d at 581–82; *Black & Decker Corp.*, 944 F.Supp. at 228; *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 484 F.Supp. 643, 647 (S.D.N.Y.1979), *aff'd in part, rev'd in part on other grounds*, 618 F.2d 950 (2d Cir.1980).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted and the complaint dismissed.

**SO ORDERED.**

---

the Court need not address the likelihood of confusion, it need not inquire into the eight likelihood of confusion factors identified by the Second Circuit in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961), including the similarity between the plaintiff's and the defendant's marks.